IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

HOUSTON A. G.,                  )
                                )
       Plaintiff,              )
                                )
v.                              )   Case No. 23-CV-211-MTS
                                )
MARTIN O'MALLEY,[1]             )
Commissioner of Social Security,)
                                )
       Defendant.              )

## OPINION AND ORDER

Plaintiff Houston A. G. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

2

405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On September 3, 2020, Plaintiff filed an application for both Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, and Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.*, under the SSA. (R. 21, 302–14). He alleged an inability to work beginning on February 1, 2020, due to limitations resulting from type 1 diabetes, constant diarrhea, eyesight problems, four infected teeth, foot numbness, and lactose intolerance. (R. 21, 361). Plaintiff was thirty-six years old at the time of the ALJ's decision. (R. 32, 302). He has at least a high school education and past relevant work as a restaurant cook and warehouse laborer. (R. 31–32).

Plaintiff's application was denied both initially and upon reconsideration. (R. 90–157). At

3

Plaintiff's request, ALJ Dennis LeBlanc, conducted both an administrative hearing on March 16, 2022, and a supplemental hearing on September 2, 2022. (R. 40–89). The hearings were held via teleconference pursuant to COVID-19 procedures. (R. 215–17). The supplemental hearing included testimony from medical expert Kweli J. Amusa, M.D. (R. 40–56). ALJ LeBlanc issued a decision on October 28, 2022, denying benefits and finding Plaintiff not disabled. (R. 18–39). Plaintiff sought review by the Appeals Council, which was denied on March 20, 2023. (R. 1–6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since February 1, 2020. (R. 23). At step two, he found Plaintiff suffered from the severe impairments of diabetes mellitus and neuropathy. (R. 24). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. *Id.* Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained the following RFC:

> [A] reduced range of light work . . . except lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl and frequently handle, finger, and feel. He should avoid exposure to hazards such as dangerous machine[ry] and unprotected heights. The job should not involve operation of foot pedals or driving.

*Id.*

At step four, the ALJ determined Plaintiff had past relevant work as a restaurant cook and warehouse laborer. (R. 31). Based on the testimony of a vocational expert, the ALJ concluded at

step five that Plaintiff could perform the representative jobs of belt inspector, laundry inspector, and food inspector, all of which he found existed in significant numbers in the national economy. (R. 32–33). As a result, the ALJ found Plaintiff had not been under a disability from February 1, 2020, through the date of decision. (R. 33).

**Errors Alleged for Review**

Plaintiff asserts two main errors for review in his challenge to the Commissioner's denial of benefits. (Docket No. 10 at 4). First, Plaintiff argues that the ALJ failed to apply the correct legal standards when assessing the medical opinions of record. *Id.* at 4–11. Second, Plaintiff asserts that the ALJ did not properly assess Plaintiff's subjective complaints. *Id.* at 12–15.[2]

**The ALJ's Consideration of the Medical Opinion Evidence**

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c, 416.920c(a). Instead, the ALJ must articulate how persuasive he finds each medical source's opinion by considering certain factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). These factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict

---

[2] The Court notes that Plaintiff, amid portions of his consistency argument, appears to complain generally that the RFC is unsupported by substantial evidence. Failing to develop an entirely coherent argument subjects Plaintiff to possible waiver of the issue. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review."). However, in the interest of justice, the Court will address the sufficiency of the ALJ's RFC determination in a separate section of this Opinion and Order.

a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[3]

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff makes multiple arguments regarding the ALJ's analysis of the relevant medical opinions. First, Plaintiff asserts the ALJ failed to include a proper consistency analysis in his discussion of the state agency consultants' opinions. (Docket No. 10 at 6–7). Second, Plaintiff argues that the ALJ failed to properly analyze Dr. Amusa's testimony. *Id.* at 9–11.

1. *The ALJ's Analysis of the State Agency Consultants' Opinions*

The ALJ discussed the opinions of the state agency consultants, Evette Budrich, M.D., and James Metcalf, M.D., both of whom found Plaintiff not disabled and capable of performing

---

[3] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

6

medium exertional work[4] with certain exertional limitations. (R. 30) (R. 94, 102, 132, 140). The ALJ found these opinions to be unpersuasive although he acknowledged that they were "supported by their limited examination of the record that noted [Plaintiff's] non-compliance with prescribed treatment resulting in multiple hospitalizations due to that." *Id.* Further, the state agency consultants noted that: Plaintiff's physical exams were normal; he could ambulate effectively and had full range of motion without pain; he could manipulate without difficulty; and had normal uncorrected vision. *Id.* (citing R. 100, 138). Plaintiff also displayed no sensory loss at the consultative examination on November 13, 2020, despite alleging neuropathy.[5] *Id.* Despite finding that the state agency consultants' opinions were supported by the evidence of record, the ALJ determined that a light range of work[6] with exertional limitations would be more consistent with Plaintiff's testimony regarding his neuropathy and "physical examinations noting absent vibration testing and diminished monofilament testing." *Id.* (citing R. 851).

The ALJ's explanation for finding the state agency consultants' opinions unpersuasive is reasonable. The ALJ discussed the evidence relied upon by the state agency consultants, noting that it did in fact support their opinions. (R. 30). However, while the evidence of record indicated

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] Plaintiff argues that the ALJ erred by misstating a medical source statement when he stated that Plaintiff had no sensory loss at the consultative examination. (Docket No. 10 at 6–7). The Court disagrees. The examination included a neurologic finding that there were "[n]o sensory or focal defects appreciated." (R. 688). Plaintiff also had no sensory loss in his first three fingers. (R. 691). However, the examiner did assess Plaintiff with neuropathy, which can cause numbness and loss of sensation. (R. 688). Regardless, the ALJ's conclusion that the state agency consultants' opinions were supported by the evidence of record was not solely based on the evidence presented by the consultative examination. (R. 30). Moreover, the ALJ accounted for Plaintiff's neuropathy by imposing a more restrictive RFC than recommended by the state agency consultants. (R. 24).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff's physical exams were mostly normal, the ALJ reasoned that a more restrictive RFC was appropriate and was therefore unpersuaded by the state agency consultants' opinions. *Id.* The ALJ determined a light RFC was more consistent with evidence of Plaintiff's complaints of neuropathy and a physical examination from December 16, 2021, showing diminished sensation in his feet. *Id.* (citing R. 851). The ALJ included both supportability and consistency analyses and therefore applied the correct legal standards by articulating why he found these opinions unpersuasive. *See Rusty F. v. Kijakazi*, No. 21-CV-7-CVE-CDL, 2022 WL 10365886, at *6 (N.D. Okla. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 4465178 (N.D. Okla. Sept. 26, 2022) (citing *Mays v. Colvin*, 739 F.3d 569, 574–76 (10th Cir. 2014)) ("An ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion.").

    2. *The ALJ's Analysis of Dr. Amusa's Opinions*

The ALJ discussed Dr. Amusa's testimony from the supplemental hearing, noting that he testified that Plaintiff has the severe impairment of diabetes mellitus type I ("DM1") complicated by peripheral neuropathy. (R. 30) (referencing R. 44–45). Dr. Amusa also noted Plaintiff's diagnosis of gastroparesis. *Id.* (R. 45, 1140). Throughout his testimony, Dr. Amusa referenced evidence of Plaintiff's medication non-compliance resulting in poorly controlled diabetes; he also opined that "[t]ypically, [Plaintiff] would be on an insulin pump to manage his blood sugar." *Id.* (R. 44–47).

As to Plaintiff's work-related physical limitations, Dr. Amusa testified that Plaintiff "would be limited to not lifting greater than 20 pounds on occasion or 10 pounds frequently[]" and that Plaintiff "would stand and/or walk only four hours during the course of a day and sit for six[,]" with occasional postural limitations, but no ladders, ropes, or scaffolds. *Id.* (referencing R. 47).

Dr. Amusa further advised that Plaintiff should avoid unprotected heights or hazards and exposure to any temperature extremes. *Id.* He also added that Plaintiff "may require an additional bathroom break in the – during the course of the eight-hour day. What I saw was that the diarrhea was associated with a meal, so that may not be necessary . . . ." (R. 30) (referencing R. 47–48). Lastly, Dr. Amusa conveyed that there was a possibility that Plaintiff would be absent from work one to two days per month. *Id.* (referencing R. 48). However, Dr. Amusa qualified Plaintiff's possible absences by stating that they may not occur as frequently if Plaintiff were "more compliant with medication." *Id.* (referencing R. 48–49).

The ALJ found Dr. Amusa's opinion partially persuasive. (R. 30). He found that the opinion was supported by Dr. Amusa's own testimony regarding Plaintiff's normal gait and station, his not requiring the use of an assistive device, and his peripheral neuropathy. *Id.* (referencing R. 45, 46, 47). Although the ALJ found the opinion "generally consistent with the [assessed RFC][,]" he imposed "more restrictive standing and walking limitations due to [Plaintiff's] peripheral neuropathy." (R. 30–31).

The Court disagrees with Plaintiff's complaint that the ALJ failed to properly analyze Dr. Amusa's medical opinion. Plaintiff correctly points out that Dr. Amusa assessed Plaintiff as being able to stand and/or walk for four hours out of an eight-hour workday, while the RFC limits Plaintiff to standing and/or walking for two hours. (R. 24, 47). The ALJ explained that Dr. Amusa's opinion was supported by some of the evidence of record and found that his opinion was *generally* consistent with the ALJ's RFC. (R. 30). However, because Plaintiff's neuropathy necessitates more restrictive limitations, the ALJ did not impose an RFC that mirrored Dr. Amusa's limitations. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine

9

that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."). While the ALJ did not discuss the entirety of Dr. Amusa's testimony, the ALJ is not required to do so. *See* 20 C.F.R. § 416.920c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . . We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). Thus, as with the state agency consultants' opinions, the ALJ applied the correct legal standards by articulating why he found Dr. Amusa's opinion partially persuasive and included both supportability and consistency analyses.

### The ALJ's Consistency Determination

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used

10

by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7–8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

According to Plaintiff, the ALJ failed to properly proceed through step two of the consistency determination when evaluating Plaintiff's subjective statements. (Docket No. 10 at 13). In evaluating Plaintiff's subjective complaints, the ALJ outlined the two-step process set forth in SSR 16-3p and the requirements of 20 C.F.R. §§ 404.1529, 416.929. (R. 25). The ALJ thoroughly discussed Plaintiff's testimony during both hearings and reviewed his statements made in a function report from September 29, 2020. *Id.* He noted Plaintiff's reported difficulties with lifting, squatting, standing, walking, climbing, and seeing, although Plaintiff was able to walk to work at one time. *Id.* (citing R. 384–91). The ALJ then discussed Plaintiff's activities of daily living which included preparing meals, sweeping, mopping, vacuuming, washing dishes, doing laundry and yardwork, shopping, and managing his finances. *Id.* Additionally, Plaintiff socially interacts once or twice per week and attends church. *Id.* Although Plaintiff reported no issues with personal care, he uses adult diapers when he sleeps. (R. 25).

Plaintiff also testified to having chronic diarrhea and spending three to five hours in the

11

bathroom per day. (R. 25, 26). Specifically, "he is unable to work because within 10-15 minutes of eating, he has to get up and use the restroom." *Id.* As to Plaintiff's DM1, he was first diagnosed in 2010. *Id.* For the first seven years following his diagnosis, Plaintiff was non-compliant with medication due to lack of health insurance. (R. 26). However, he has since obtained healthcare. *Id.* He takes long-term insulin twice a day and short-term insulin before every meal on a sliding scale, all of which takes between fifteen minutes to an hour to administer. *Id.* Despite this, he struggles with regulating his blood sugar which can cause nausea, vomiting, blurred vision, sweating, lightheadedness, and confusion. (R. 25–26).

As mentioned previously, Plaintiff testified that he has issues with walking in part due to swelling and numbness in his shins and feet. (R. 26). The ALJ noted that the swelling in Plaintiff's legs has reportedly increased since his September 2020 function report and the numbness in his fingers and hands began approximately a year ago. *Id.* The swelling in his legs, which begins within thirty minutes of standing, "causes sharp pains, throbbing, and fiery burning[.]" *Id.* He also has difficulty lifting his arms above his head. *Id.* However, Plaintiff was able to work at Sonic, Casey's, and a donut shop, albeit with difficulty. *Id.*

Ultimately, although the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, he determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the totality of the evidence. (R. 26) ("[Plaintiff's] treatment history, as discussed below, is not indicative of someone with his alleged level of pain or limitation from impairment."). The ALJ then continued to thoroughly discuss the medical evidence of record. (*See* R. 26–31). In analyzing Plaintiff's subjective complaints, the ALJ discussed Plaintiff's capacity to perform various activities of daily living, the location, duration, frequency, and intensity of his pain and

other symptoms, precipitating and aggravating factors, and the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). There is no indication that the ALJ misread the medical evidence. Instead, the record shows that the ALJ complied with the requirement that he set forth specific evidence relied upon in his evaluation. *See Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls*, 206 F.3d at 1372). The ALJ's decision allows for meaningful review in satisfaction of SSR 16-3p.

Lastly, Plaintiff argues the ALJ erred because, "[r]ather than assess whether any of the objective evidence is 'inconsistent,' the ALJ only finds [Plaintiff] was non-compliant with his prescribed treatment, and after he became compliant, improved with care." (Docket No. 10 at 13–14) (relying on SSR 18-3p, 2018 WL 4945641 (Oct. 2, 2018)). The Court is unpersuaded by this contention. Pursuant to SSR 18-3p, an ALJ only performs an analysis of failure to follow prescribed treatment "after [the ALJ] find[s] that an individual is entitled to disability or eligible for statutory blindness benefits under titles II or XVI of the Act . . . . [The ALJ] will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled . . . ." 2018 WL 4945641, at *3 (Oct. 2, 2018); *see Allred v. Comm'r, SSA*, No. 22-4044, 2023 WL 3035196, *3 (10th Cir. Apr. 21, 2023) ("An ALJ may properly consider a claimant's failure to follow prescribed treatment when evaluating the intensity and persistence of symptoms[]" without proceeding through a SSR 18-3p analysis.); *Scott A. B. v. Kijakazi*, No. 21-CV-558-CDL, 2023 WL 2713991, at *5 n.2 (N.D. Okla. Mar. 30, 2023) (noting that SSR 18-3p "applies only when an ALJ has determined a claimant has a disabling impairment but finds that benefits should be denied because the claimant has refused to follow prescribed treatment"); *Kenton L. C. v. Kijakazi*, No. 20-CV-260-JFJ, 2021 WL 5154118, at *6 (N.D. Okla. Nov. 5, 2021) (same). That is not the case here. The ALJ never determined that Plaintiff was disabled. Rather, he found

13

Plaintiff not disabled and capable of a reduced range of light work. (R. 24). Contrary to Plaintiff's claim, the ALJ's RFC discussion was not based solely on Plaintiff's medication non-compliance. Rather, his non-compliance was one factor among many discussed by the ALJ.

### The ALJ's RFC Assessment

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Importantly, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Plaintiff seemingly argues that the ALJ failed to support his RFC finding with substantial evidence. More specifically, Plaintiff asserts that the ALJ erred in not "explain[ing] how limiting an individual to standing and/or walking six hours and, further, not limiting [Plaintiff] to walk only

14

on flat surfaces is consistent with [Plaintiff's] specific testimony 'about the neuropathy' in his feet." (Docket No. 10 at 7). He also contends that the ALJ failed to "explain why . . . limiting [Plaintiff] to refrain from exposure to hazards accommodates the limitations [Plaintiff] stated he faced while standing and walking when unable to feel his feet or take medication for this issue." *Id.* at 8. Lastly, Plaintiff alleges that the ALJ did not explain how limiting Plaintiff to being off task at work for ten minutes twice daily accounts for his impairments, particularly his hyper- and hypoglycemia and gastroparesis. *Id.* at 10–11, 14.

The ALJ began the RFC discussion by stating that he considered all of Plaintiff's symptoms, the objective medical evidence, including medical opinions and prior administrative medical findings, in addition to other evidence. (R. 25). He then summarized Plaintiff's subjective statements as discussed above. (R. 25–26).

Continuing through the evidence of record, the ALJ discussed Plaintiff's medical records from February 2019 documenting his hospitalization for nausea, vomiting, and chest pain. (R. 27) (citing R. 558). Plaintiff had not been taking his short-acting insulin for a few years due to financial restraints. *Id.* Instead, he had been taking a family member's long-acting insulin. *Id.* The records also noted Plaintiff had a history of alcohol abuse. *Id.* Plaintiff was stable at discharge and diagnosed with diabetic ketoacidosis ("DKA"), DM1, hypokalemia, and lactic acid acidosis. *Id.* (referencing R. 558–59). He was also given medication samples. (R. 27).

Plaintiff was again hospitalized in December 2019 for weakness and fatigue. *Id.* (citing R. 546). He reported compliance with his insulin and his physical examination was normal. *Id.* He was then discharged the next day with diagnoses of acute kidney injury ("AKI"), acute dehydration, and DM1. *Id.*

The ALJ then discussed records of Plaintiff's five-day hospitalization in March 2020 for

15

weakness and malaise. *Id.* (citing R. 515). Plaintiff was medication non-compliant for two days prior to hospitalization. (R. 27). However, his physical exam was within normal limits and sensation was intact to light touch. *Id.* (citing R. 515). Plaintiff was diagnosed with AKI, dehydration, dental abscess, DKA, hyperkalemia, and transaminitis. *Id.* (citing R. 503). The attending physician noted Plaintiff's history of medication non-compliance and polysubstance use, stating that "[r]eadmissions [we]re likely due to this." *Id.* (citing R. 504).

In July 2020, Plaintiff was again hospitalized overnight due to weakness and vomiting. *Id.* (citing R. 483). Plaintiff reported missing his dose of insulin the previous night. (R. 27). He also tested positive for THC. *Id.* (referencing R. 498). He was diagnosed at discharge with hyperglycemia, DM1, and nausea and vomiting. *Id.* (citing R. 483).

Once again, Plaintiff was hospitalized in August 2020 and reported that he had run out of his short-acting insulin and had instead been taking long-acting insulin. *Id.* (citing R. 469). His discharge diagnoses included DKA and DM1. *Id.* (citing R. 467, 678). In early October 2020, Plaintiff was found unresponsive and taken to the hospital. *Id.* (citing R. 664). He returned to the hospital again in late October 2020 with complaints of bilateral lower extremity swelling. (R. 28) (citing R. 696).

In November 2020, Plaintiff submitted to a consultative examination with Heather Konsure, D.O. *Id.* (citing R. 687–95). Plaintiff reported that he had recently started taking Gabapentin for the pain in his feet but had stopped because it aggravated his chronic diarrhea. *Id.* His vision was assessed as 20/20. *Id.* His grip strength, gait, stability, and range of motion were all assessed as normal, and he was able to move without use of an assistive device. *Id.* Further, he "could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools." (R. 28). Dr. Konsure assessed Plaintiff with DM1, neuropathy, chronic diarrhea,

dental caries, and headaches. *Id.* (citing R. 687–95).

In January 2021, Plaintiff met with Alexandra Fifer, APRN. *Id.* (referencing R. 876–902). Plaintiff reported using Gabapentin to treat the neuropathy in his feet and hands, but claimed it aggravated his chronic diarrhea. *Id.* (citing R. 895). Other than decreased sensation in his feet, his physical examination was normal. *Id.* (citing R. 896). Plaintiff also reported that he was working part-time at a local fast-food restaurant. (R.28) (citing R. 895). Nurse Fifer assessed Plaintiff with DM1, peripheral neuropathy, protein calorie malnutrition, hypothyroidism, polysubstance abuse, and nicotine dependence, and recommended an increase in his medications. (R. 896). On three subsequent visits in February and March, Plaintiff's physical exams were generally normal other than some dental and gastrointestinal issues. (R. 887, 891, 893).

Plaintiff returned to the hospital in April 2021, complaining of hyperglycemia. (R. 29) (citing R. 763). He reported that, although he had a supply of insulin, he had not been using it. *Id.* Plaintiff's physical exam was normal other than being tachycardic. *Id.* (citing R. 764–65). He was discharged eight days later with diagnoses of DKA and vomiting. *Id.* (citing R. 761).

In early May 2021, Plaintiff met with Nurse Fifer post-hospitalization. (R. 29) (citing R. 883). She noted that Plaintiff was regularly non-compliant with his insulin regimen. *Id.* His physical exam was generally normal, and he continued to work part-time. *Id.* In late May 2021, Plaintiff reported feeling better overall. *Id.* (citing R. 881). However, Plaintiff returned to the hospital for four days in June 2021, complaining of hyperglycemia. (R. 29) (citing R. 817). He was discharged with diagnoses of DKA, AKI, gingivitis, DM1, tooth abscess, and nicotine dependence. *Id.* (citing R. 790).

Following a referral, Plaintiff met with endocrinologist Deepa Philip, M.D., in November 2021. *Id.* (citing R. 854). Plaintiff reported tingling and numbness in his bilateral lower

17

extremities. *Id.* In December 2021, Plaintiff's diabetic foot exam indicated that vibration testing was absent in both feet. *Id.* (citing R. 851). The exam also indicated that fine monofilament testing was 1/10 in Plaintiff's right foot and 0/10 in his left foot. *Id.*

Plaintiff met with Nurse Fifer in December 2021. (R. 29) (citing R. 876–77). Plaintiff advised he had been approved for Sooner Care and further advised he had begun working at a donut shop. *Id.* (citing R. 876). He complained of numbness and tingling in his right arm and hand, noting that it worsened while working. *Id.* Plaintiff reported that the neuropathy in his feet was generally under control. *Id.* During his January 2022 appointment with Dr. Philip, Plaintiff reported he was not always compliant with his recommended insulin dosages. (R. 29–30) (citing R. 848–49). In February 2022, Dr. Philip noted that Plaintiff's DM1 was not at goal but improving. (R. 30) (citing R. 845). In June 2022, Dr. Philip noted that Plaintiff's DM1 was not at goal with no mention of improvement. *Id.* (citing R. 919).

After an analysis of the various medical opinions, the ALJ concluded that Plaintiff's allegations and subjective complaints were inconsistent with the evidence of record. (R. 30–31). Specifically, the ALJ noted that Plaintiff was frequently hospitalized when he was without healthcare coverage, but that "once [Plaintiff] began regular primary care treatment and additional specialized treatment with an endocrinologist, he ha[d] not had an episode of DKA since June 2021." *Id.* He also noted that Plaintiff's condition "vastly improved" once he became medication compliant. *Id.* He determined there was nothing in the record to support Plaintiff's claim that he spends every thirty to forty-five minutes in the restroom due to his chronic diarrhea. *Id.* The ALJ explained that the RFC's reduced range of work accommodates Plaintiff's neuropathy and is further supported by regular reports of Plaintiff's normal gait. (R. 31). Moreover, the ALJ found that the RFC is consistent with Plaintiff's ability to sit and use his arms and hands. *Id.* In summary,

the ALJ concluded that, "if [Plaintiff] remains [treatment] compliant, he can sustain work . . . ." *Id.*

Plaintiff's claim that the ALJ failed to explain how the RFC accounts for Plaintiff's limitations is inaccurate. (Docket No. 10 at 7–8). The ALJ accounted for Plaintiff's neuropathy by limiting him to an RFC requiring that he stand and/or walk for only two hours in an eight-hour workday, explaining that the evidence of record consistently demonstrated that Plaintiff had a normal gait and range of motion. (R. 24, 31). Plaintiff also complains that his chronic diarrhea and gastroparesis require that he be off task during the workday making it impossible to perform the assigned RFC. (Docket No. 10 at 10–11). The ALJ determined that Plaintiff's subjective complaints were not entirely consistent with the evidence of record, particularly Plaintiff's "allegations of chronic diarrhea that puts him in the restroom every 30-45 minutes . . . ." (R. 31). It is Plaintiff's responsibility to prove disability and he cannot do so by relying solely on his own subjective complaints. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Moreover, Plaintiff's disagreement with the ALJ's interpretation of the evidence, without more, does not amount to error. *See Howard*, 379 F.3d at 949; *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The ALJ is responsible for determining Plaintiff's RFC and the Court will not reweigh the evidence absent an indication it was improperly considered. *Id.*

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 17th day of June, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT